## Social Security Referendum

THOMAS D. MCBRIDE, Attorney General; HARRY L. ROSSI, Deputy Attorney General, January 22, 1957.—You have asked to be advised as to whether or not the 90 days' notice of referendum as required by section 218 of the Social Security Act may commence running prior to the date upon which the existing retirement systems are divided for referendum purposes.

It is our conclusion that it may not commence running prior to such date.

It is our further conclusion that a 90-day period must elapse prior to the date upon which the existing retirement system is divided for referendum purposes in

order to insure the proper and adequate dissemination of information concerning social security coverage.

Section 218(d)(3) of the Social Security Act of August 14, 1935, 64 Stat. at L. 514, as amended, 42 U. S. C. §418, sets forth the referendum procedures under which a State may contract for the extension of Old Age and Survivors Insurance coverage "to services performed by individuals as employees of such state or any political subdivision thereof".

The Governor of the State must certify to the Secretary of Health, Education and Welfare as a prerequisite to contract, that the following conditions have been met:

"A. A referendum by secret written ballot was held on the question of whether service in positions covered by such retirement system should be excluded from or included under an agreement under this section;

"B. An opportunity to vote in such referendum was given . . . to eligible employees;

"C. *Not less than ninety days' notice of such referendum was given to all such employees;*

"D. Such referendum was conducted under the supervision of the Governor or an agency or individual designated by him; and

"E. A majority of the eligible employees voted in favor of including service in such position under an agreement under this section." (Italics supplied.)

On August 1, 1956, subsequent to the effective date of the above subsection, section 218(d)(6) of the Social Security Act was amended permitting in certain named States, including Pennsylvania, a division of existing retirement systems for referendum purposes into two divisions or parts; one composed of those contributors who expressed the desire to be covered under Old Age or Survivors Insurance, and the other composed of those contributors who expressed the desire not to be so covered. The aforesaid amendment was

necessary because of the existence of constitutional prohibitions in State constitutions forbidding any impairment of existing retirement contractual obligations running between the State and the members of its retirement systems: Attorney General's Opinion No. 678.

The question now arises as to when the 90 days' notice of referendum as required in section 218 (d) (3), supra, may commence running, that is, prior or subsequent to the date upon which the existing retirement systems are divided as aforesaid for referendum purposes; the Social Security Act provides no answer within its provisions. Indeed section 218 (d) (3) thereof was not correspondingly amended to answer the variation provided in the amendment to the Social Security Act permitting a division in existing retirement systems.

Section 218 (d) (3) was enacted in contemplation of a "majority rule" procedure in existing retirement systems and not in contemplation of individual selection.

We agree that the notice of referendum appears to serve no reasonable purpose if it must be given after the existing retirement system is divided since the division is the all important event.

It is the division of the existing retirement system which actually determines the substantial changes in the pension benefits of the participants.

If it was the intention of the Congress to insure the participants in the referendum of proper notice so that they might determine what benefits would accrue to them and the liabilities to which they will be subject, it would seem that notice should occur prior to the division of the existing retirement system.

Notwithstanding the above observations, certain considerations must be given to the conditions which must be met prior to coverage contract as provided by

Federal law and to certain guides and information directed to the States by the Department of Health, Education and Welfare related thereto.

Transmittal letter No. 5 of the Handbook for OASI Administrators contains the following information:

"The division of a retirement system, as described in item 3 above (1956 amendment permitting the division of retirement systems on basis of whether or not employes desire coverage) establishes two new deemed retirement systems for purposes of Section 218(d)(6) of the Act. After the division has been made, service of individuals in either of these two retirement systems may be covered *only pursuant* to the referendum procedures set forth in Section 218(d)(3) (related hereinabove) of the Act. The referendum requirements are explained in sections 230-238 of the Handbook. *Since the divisions of a retirement system serves to establish two new systems, it appears that the State will need to give notice of and hold the referendum after the retirement system has been divided in order to meet the requirements of the Social Security Act. If, however, a State believes that it can follow a different procedure, it may submit its plan through the regional representative for advice as to whether the requirements of the Act will be met.*" (Italics supplied.)

It is, therefore, at least the unofficial opinion of the Bureau of Old Age and Survivors Insurance that the State is required to give notice of the referendum *after the retirement system has been divided for referendum purposes.*

Believing that a different procedure could be followed, the Bureau of Social Security for Public Employes for the Commonwealth of Pennsylvania submitted a plan to the regional representative which incorporated a provision for notice of referendums to be given prior to the division of the existing retirement system together with a request for advice as to

whether the requirements of the act were being met.

The office of the regional representative refused to give such advice but rather submitted the following in letter form:

". . . This is to advise you that our Federal Act contemplates no such prior approvals. As you recognize, the provisions of section 218(d)(3) contemplate only a certification from the Governor of the State to the Secretary of our Department that the conditions there set forth have been fulfilled. In our prior experience with other states in which referenda have been held, prior official advice of proposed procedures for the conduct of referenda has not generally been requested."

Thus, the regional representative has thrust the problem back to the Governor and to the Commonwealth, and we, in order to provide the additional benefits of social security coverage to our employes, must interpret the Federal law with the view of insuring to such employes that they will receive the same if they so desire without the existence of doubt as to the mandates contained therein.

It is noted also that orally, the regional representative cautioned the Bureau of Social Security for Public Employes of the Commonwealth that Transmittal Letter No. 5, supra, did contain language which appeared to advise that the State is required to give notice of the referendum after the retirement system has been divided for referendum purposes in order to meet the requirements of the Social Security Act.

It is also noted that in the State of Wisconsin the identical problem arose and when the regional representative failed to render advice with respect to such problem, it was decided that two notices be given, one before the division of the retirement system and the other subsequently thereto. We have been further notified that in the State of Tennessee procedures have

been instituted which provide for the 90-days' notice after the division of the retirement system.

New York, however, did not provide for a 90-day period of notice after the division of their system. New York does not anticipate any problems as a result of their action, but the State of Wisconsin was guided in its decision to give a 90-day notice after the division of their system in anticipation of problems arising from antagonism directed towards the coverage program by certain school teachers groups.

It seems apparent that if any litigation would develop as the result of not adhering to the 90-day notice after division, that such litigation would be directed not from the Federal government, but by groups within the State.

The regional representatives have stated that so long as the Governor certifies that the conditions related in section 218 (d) (3), supra, have been met, they will not look beyond such certification.

Therefore, it appears that in order to avoid any possibility of litigation, a 90-day notice period must be required after the division of our existing retirement system.

It is realized that we are confronted by the limitations of time and a compulsion to effect early coverage of our employes thereby securing coverage for those individuals who by reason of death or retirement prior to coverage will not, nor will their survivors, benefit by social security coverage.

We must, however, in spite of our sympathy for the relatively few who will be prohibited from obtaining coverage for the above reasons, weigh their loss against the great loss which would result by general invalidation of our procedure or by greater delays produced by litigation. The institution of litigation might be accompanied by a successful attempt to stay

all proceedings pending the disposition of the litigation.

We are still confronted, however, with another problem, that is, we must consider the sufficiency of any period provided for informational purposes which will enable our employes to select their preference wisely.

In providing that "not less than ninety-days' notice of such referendum was given to all such employees", Congress must have intended to insure to the employes, sufficient notice so that they might determine what benefits would accrue to them and to what liabilities they would be subject before they were called up to express their desire or lack thereof for coverage in a secret referendum.

Thus, it was the secret referendum which produced changes, if any, in the substantive rights of employes in existing retirement systems before the 1956 amendments to the Social Security Act were approved.

The 1956 amendments to the Social Security Act, however, permitted a division in existing retirement systems for the purpose of permitting employes to select to be covered or not to be covered by social security before the secret referendum was held, thereby freeing dissenting employes from any compulsion to be bound by majority rule and prevent an impingment upon any right which may have vested under their existing retirement system.

Therefore, where this preliminary division was permitted, the importance of exercising choice shifted from the secret referendum to the choice in the division, since it is the division of the existing retirement system which actually determines the substantive changes in the pension benefit of the employes.

Thus, if before the 1956 amendment the 90-days' notice of referendum served to insure employes against

insufficient notice and time in which to consider whether or not they desired coverage before the secret referendum, and we think that such was the case, then an information period must now serve to insure employes against insufficient notice and time in which to consider whether or not they desire coverage before selecting a division in the existing retirement system.

Surely, an information period between the date of the division and the secret referendum can serve no useful purpose since it is the selection by the employe of the division which determines his rights, benefits and liabilities and not the secret referendum. Indeed, the secret referendum has been reduced to a mere formality in those cases in which a preliminary division occurs.

The question arises as to when such informational period should be given.

It seems clear and logical that if an informational period is to serve any useful purpose it must be given before the date scheduled for the division of the existing retirement system.

Our legislature clearly expressed their intent in this regard and for this purpose matches the intent of Congress.

Section 6.1 of the Act of January 5, 1952, P. L. 1833, as amended by the Act of June 1, 1956, P. L. 1973 (Pennsylvania Social Security Enabling Legislation), provides:

". . . The notice of referendum required to be given to employes shall contain or shall be accompanied by a statement in form and detail as the agency or individual designated to supervise the referendum shall deem necessary to inform the employes of the rights which will accrue to them and their dependents and survivors, and the liabilities to which they will be subject if their services are included under an agreement under this act and of the changes, if any, proposed to be

made in the provisions of their pension or retirement system at the time the agreement is entered into. The information shall be sufficient to illustrate to the eligible employe the total combined costs and benefits which will accrue from social security and the pension or retirement system or the proposed modifications thereof."

Certainly the above information must be given to the employes prior to their exercising a choice in the division of our existing retirement system.

The importance of the information period is centered upon the provision of the Constitution of the Commonwealth of Pennsylvania and upon court decisions which demand that where the existing retirement system is to be modified, it can only be accomplished with the consent of the members therein; otherwise contractual obligations might be impaired and vested right impinged upon.

A consent by a member would be valid only where he has been given sufficient information upon which he could act and decide and sufficient time in which he could weigh such information.

If the information is not sufficient or if the information period falls short of that which is required, our procedure would be subject to attack and this deficiency might be considered as having vitiated any attempted consent by an employe.

In view of the provisions of Federal law requiring a 90-day notice and the reasons therefor, and in view of the mandates of our enabling legislation relative to information to be given, it must be concluded that the mandate of both Federal and State law would be best satisfied by providing a period of 90 days for the dissemination of information and the study thereof prior to the date upon which the selection will be made by employes of a division of our existing retirement systems for referendum purposes.

It is our opinion and you are accordingly advised that the 90-days' notice of referendum as required by section 218 of the Social Security Act may not commence running prior to the date upon which the existing retirement systems are divided for referendum purposes and that a 90-day period must elapse prior to the date upon which the existing retirement systems are divided for referendum purposes during which said 90 days proper and adequate information relative to social security coverage may be disseminated.